FORET, Judge.
Our learned brother of the trial court has written a comprehensive and well-reasoned opinion for judgment, and we adopt his reasons, and decree * herein, as our own, except for amendment of the decree which appears hereinafter:
“This is a mandamus proceeding to compel the St. Landry Parish Police Jury, in its capacity as governing authority of Fire Protection District # 3 of St. Landry Parish, to comply with R.S. 33:1967[1] by placing a captain in charge of each piece of firefighting apparatus located at the Lawtell fire station. Fire Protection District # 3 (see R.S. 40:1491 et seq. authorizing the creation of fire protection districts as administrative subdivisions of the state) covers a large portion of the unincorporated area of Ward 1 and portions of Wards 5 and 6 of St. Landry Parish and has two fire houses or stations — the main station located just outside of the City of Opelousas and the substation at Lawtell, an incorporated community about 5 to 7 miles west of Opel-ousas. The three petitioners are employees of said district assigned to the Lawtell station. They are the only personnel assigned to that fire station and none of them have reached the rank of captain. They work in three shifts of 24 hours each. At the Law-tell station are two fire trucks, a rescue unit and other nonvehicular equipment. At the main station, there are two firetrucks, a water tank truck and a rescue unit. This station is maintained by three 5-man shifts each consisting of an assistant chief, one captain, one operator and two firemen.[2]
*981 “Petitioners do not seek any relief relative to the main fire station and it is not clear whether they are contending that a captain assigned to each vehicular fire fighting apparatus be on actual duty at the Lawtell station round the clock or merely subject to call.[3]
“Defendant contends that R.S. 33:1967 is rendered inoperative by the application of the civil service laws and alternatively that, even if said statute is applicable, there is compliance with it by virtue of the fact that a captain continually on duty at the central fire station has supervision over all firefighting equipment in the whole fire protection district.
“R.S. 33:1967 had its origin in a substantially different form in Act 61 of 1920 which applied to municipalities of 10,000 to 100,000. Act 80 of 1920 had substantially the same provisions but with some modifications and applied to municipalities of over 100,000 inhabitants. These two acts contain various provisions relative to organization of municipal fire .departments. They provided that each fire department was to be divided into two forces or platoons — one for night duty and one for day duty. Thus, up to 1950 and including the statutory revision of that year, the relied-upon law mandated a captain in charge of each force, that is, each working shift. This controversy owes its existence to Act 193 of 1950. That law defined the term “force” in R.S. 33:1967 to mean “ . . . any single piece of firefighting equipment.” By the simple definition, the captaincy requirement was changed to pertain to machinery instead of personnel.
“Twice since 1950 (Act 359 of 1956 and Act 134 of 1962), Secs. 1961 (dealing with applicability of the organization subpart) and Sec. 1967 (the captaincy requirement) have been amended and re-enacted. The significance of these amendments will be dealt with later.
“In the meantime civil service came to fire-fighting services. It came to cities over 100,000 population in 1940 (see R.S. 33:2391). It came to municipalities between 13,000 and 250,000 in 1944 (see R.S. 33:2471) and it came to small municipalities (between 7,000 and 13,000 population) and parishes and fire protection districts in 1964 (see R.S. 33:2531).
“In 1942, a minimum wage and hour law was enacted for fire-fighting personnel. These provisions established a ranking or hierarchal scheme consisting of the basic rank of fireman, lieutenant (optional in cases when it did not then exist), captain and assistant chief (also designated as battalion chief or district chief). These rankings have continued with a commensurate pay scale to date (see R.S. 33:1991 et seq.).[4]
“Counsel for defendant argues that Act 61 of 1920 (now R.S. 33:1961 et seq.) was to provide for organization of fire departments but that such organization is now affected by the civil service laws and rules thereunder to such an extent that the latter has displaced or impliedly repealed the old organization statutes including that relied on by plaintiffs herein. Specifically, attention is called to R.S. 33:2537 which authorizes civil service boards in small municipal *982 ities and fire protection districts to make rules, R.S. 38:2538 providing that such rules shall have the force and effect of law and 33:2541 providing for a classified service.
“A first reading of the above provisions and others in the applicable civil service law does suggest an incompatibility between the effect of the relied-on statute (33:1967) and the general scheme or purpose of the civil service law. However, closer scrutiny and full reflection reveal that a substantial harmony exists between these provisions. R.S. 33:1967 mandates that a particular task or function (e. g., being in charge of a fire-fighting apparatus) attach to a particular rank or position. The civil service law does not purport to assign tasks or functions to positions or jobs nor does it authorize the board to do so. It must be remembered that the police jury is the governing authority of the fire protection district. The Fire Protection District Civil Service Board carries out the civil service law and does nothing more.
“The governing authority assigns duties or tasks to positions and the board allocates positions to classes. R.S. 33:2543 and 2544 deal with the classification plan and the allocation of positions to classes. The second paragraph of the latter section clearly recognizes that the governing authority — not the board — determines the specific duties applicable to each position subject only to restraints against invidious action by the governing authority.
“R.S. 33:2533 defines various terms: “Position” means any office or employment in a municipal, parish or fire protection district, fire-police service, the duties of which call for services to be rendered by one person. “Allocation” means the official determination of the class to which a position in the classified service belongs. “Class” or “class of position” means a definitely recognized kind of employment in the classified service, designated to embrace positions that are so nearly alike in the essential character of their duties, responsibilities and consequent qualification requirements that they may fairly and equitably be treated alike under like conditions for all personnel purposes. “Classification plan” means all the classes or positions established for the classified service.
“An analysis of the above leads to the conclusion that the civil service board has no authority to assign duties or tasks to positions but only to assign positions to classes so as to achieve equitable treatment within the classes. This is one of the overall purposes of a civil service program. But the determination by a civil service board of what specific jobs or tasks go to which position is not necessary to that overall objective. Consequently, that determination is a function exercisable by the governing authority subject to any specific statutory requirements such as the statute relied upon by petitioners herein.
“Even if the civil service law impliedly authorized the board to assign duties or tasks to positions or jobs it would not avail defendant. It is doubtful that such a general grant of authority would nullify the specific and positive provision of R.S. 33:1967. But more important, any such grant to the board is subject to the limitation that it act in conformity with other laws. R.S. 33:2538, referring to the civil service board provides: “No rule, regulation or order shall be contrary to or in violation of any provision, purpose or intent of this section or contrary to any other provision of law.”
“Defendant relies particularly on a sentence in R.S. 33:2545 (part of the civil service law) which provides: “No employee shall be appointed, employed or paid under any title other than that of the class to which the position held by him is allocated.” R.S. 33:1967 requires that a captain be in charge of a fire truck. R.S. 33:2545 is designed to assure equitable effects of the civil service classification scheme insofar as' appointment, employment and pay are concerned. It has nothing to do with the makeup of a particular position or what duties are assigned to that position except to the extent that such duties tend to characterize the position in a certain class. Hence, there is no incompatibility between *983 R.S. 33:1967 and R.S. 33:2545. Even if in some fire-fighting services the personnel situation may be such as to necessitate a civil service classification plan with a different number of classes than there are ranks provided in the wage statute, that possibility does not affect the outcome in this case. We do not have that situation here. .
“The argument is made that, because civil service was extended to fire protection districts by Act 282 of 1964 which was subsequent to the last re-enactment of R.S. 33:1967 in 1962, the later of the enactments must predominate. The 1964 act did not contain an express repeal of R.S. 33:1967. The previous discussion reveals no implied repeal. Further support for the continued effect of R.S. 33:1967 is recognized in the fact that it was re-enacted subsequent to the adoption of civil service for large and medium-sized municipalities. It would be an unthinkable anomaly if R.S. 33:1967 were applicable to those municipalities but not the small municipalities and fire protection districts solely because of the sequence of enactment of the different legislation.
“It being concluded that R.S. 13:1967 is operative and must have effect in this case, there remains for determination precisely how it shall apply. Defendant argues that because a captain is at all times in charge of the whole fire-fighting operation of the fire protection district, he is necessarily in charge of each fire-fighting apparatus. The statute provides: “Each force in each fire company shall be in charge of a member of the department holding the rank of captain.” To follow the defendant’s argument, it would be necessary that the term “each” be given a group or collective meaning. Its dictionary meaning suggests a separate treatment or individualization of every apparatus. This idea of separateness, as opposed to collectiveness, is not otherwise negated by the quoted language or any other portion of the statute. I must conclude that it requires a separate or different captain as to each separate apparatus.
“However, I do not think the language of that statute requires that the captain be on duty at the Lawtell station to be “in charge” of each apparatus at that place. The Cranford case, supra, held that a requirement for “direction and command” did not require an actual on-duty presence. The rules of the fire protection district provide for one chain of authority for both firehouses and not a separate one for each. No law requires a separate command for each station or firehouse. In fact, R.S. 33:34 permits a breakdown of fire protection districts to include as much as four or' five stations in an administrative unit.
“The quoted statute requires only that the captain in charge be a member of the department and this is as to each force in each fire company. In some instances in the statutes dealing with fire services, the term “company” and “department” are used interchangeably. In many instances the word “department” is used to mean the whole fire-fighting service of a particular governmental entity such as a municipality or fire protection district. In no instances, can I find that the use of those two terms are such as to suggest that a department is less than a company. The opposite is generally suggested by the context in which they are used. Thus, the language of the statute itself suggests that any captain in the fire protection district could be placed in charge of a fire protection apparatus at the Lawtell station even if that station alone is considered a company within the meaning of the statute.
“The phrase “in charge” could possibly pertain to (1) maintenance, housing and miscellaneous attention to the fire-fighting apparatus when not in use, (2) operation or driving of the apparatus from the station to a fire site, (3) use or function of the apparatus at the fire site and (4) direction or command of the personnel which may be attached or assigned to a particular apparatus.
“Except for a driver, the law does not mandate assignment of personnel to any particular apparatus and such requirement cannot be supplied by a court. In the *984 present developmental stage of this fire protection district, there is no such particular assignment of personnel. If in the future such assignment does occur, it will be time then to accommodate the decree to the changed circumstances. Accordingly, any captain “in charge” will not have to be present with the apparatus to supervise any personnel attached to it. .
“The law specifically calls for the apparatus to be operated by an engineer or fire driver. It could hardly be the intention of the statute that the in-charge requirement would call for a captain to be present on the truck solely to chaperone the driving of an otherwise qualified driver.
“Once the apparatus is at a fire site, its use or function must be subjected to the overall strategy for fighting the fire. I cannot interpret the statute to establish each captain in charge of a fire-fighting apparatus as independent of the overall authority in the fire protection district. The minimum wage law ranking, the organization table in the fire protection district’s rules and regulations and the testimony of the Fire Chief Fontenot make it clear that there are officers above that of captain who will probably be in charge at any major structural fire. Thus, the in-charge right or authority of any particular captain over his vehicle must be subordinated to the overall command at the fire. Accordingly, there would be no practical necessity for a captain to be at the fire site to be “in charge” if there is another higher ranking official present at that fire.
“The only other activity coming under the “in-charge” concept would be the station house maintenance, etc. Certainly this would not require any continual on-duty presence of a captain at the Lawtell station house. Those maintenance functions are accomplished intermittently and do not require round-the-clock attention.
“Therefore, I conclude that there would be compliance with the statute even though the captain in charge of a particular vehicle is not on actual duty or even subject to call round the clock, is not stationed at the Lawtell firehouse and is not required to attend fires involving the particular vehicle under his charge except major structural fires at which no higher officer is present.
“Thé decree is to provide that the assignment of captain to the particular vehicles can be rotated on a reasonable basis and that the decree will be suspended during vacation periods, emergencies or sickness of key personnel. . . . ”
We affirm the judgment of the trial court, with one modification: we do not deem it necessary that the trial court decree include the words “except major structural fires at which no higher officer is present”. The varied possible conceptions about what would be a “major structural fire” within the meaning of the decree could only lead to confusion about an otherwise reasonably clear decree. We therefore amend the trial court judgment accordingly, and otherwise affirm it.
Costs of this appeal are assessed against plaintiff s-appellants.
AMENDED AND AFFIRMED.

 The trial court decreed as follows:
“That the alternative writ of mandamus be made peremptory and that the St. Landry Parish Police Jury, as governing authority of Fire Protection District 3 of said parish, assign a separate and different captain to be in charge of each vehicular fire-fighting apparatus (exclusive of rescue units) located at the Lawtell Substation, provided said captains need not be assigned to duty at the Lawtell Substation, need not be on actual duty around the clock and need not attend fires involving the vehicle under their charge except major structural fires at which no higher officer is present and provided further that the assignment of seperate [sic] and different captains to particular vehicles may be rotated on a reasonable basis, and that this decree will be suspended during vacation periods, or emergencies, or sickness of key personnel.” (Tr., pg. 85)

. R.S. 33:1967 reads as follows:
Each force in each fire company shall be in charge of a member of the department holding the rank of captain. By the term force as used herein is meant any single piece of fire fighting apparatus. In any paid fire department operated by a municipality having a population of thirteen thousand or more and in any parish or fire protection district every fire fighting apparatus shall be operated by a member of the department holding the rank of engineer or fire driver, by whichever designation he may be known, provided the term fire fighting apparatus shall not be construed to include standard passenger vehicles, nor any other type of automotive equipment assigned to five department use other than vehicles specially designed for fire fighting purposes. Provided further, that all cities now having engineers or fire drivers operating fire cars or other fire vehicles shall continue this practice.

. ... I am satisfied from the whole language of provision [LSA-R.S. 33:1967] that it is intended to require a captain for each vehicular fire fighting apparatus only and nothing else. A rescue unit would not be included.

. See Cranford v. City of Lake Charles, La. App., 92 So.2d 141 (1957) holding that R.S. 33:34 as originally enacted and mandating that every fire district (a geographical or administrative portion of a municipal fire department, parish fire department or fire protection district) be under the direction and command of an assistant chief or district chief did not require such officer to be on active duty round the clock.

. Both the rules of the police jury for Fire Protection District 3 and the classification plan of the Civil Service Board provide a ranking system roughly equivalent to that mandated by the wage statute. In all three of these systems, the rank or class of captain occupies the same relative position. Prior to 1950, R.S. 33:1967 referred to “a captain”. In the 1950 redefinition, the expression “the rank of captain” was used. The wage statute ranking was in existence when the redefinition was used and it seems that the term “captain” must draw its meaning from the ranking in the wage statute. What might happen in the situation where the civil service classification plan did not contain a classification of captain or contain such a classification not in the same relative position as the captain ranking in the wage statute scheme need not concern us in this controversy. We are not faced with that problem.